RECEIVED
IN LAKE CHARLES, LA.
JUL 31 2014
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DENIS J. SMITH | * | CIVIL ACTION NO. 2:13-CV-727 |
| Plaintiff | * | |
| V. | * | JUDGE MINALDI |
| PNK LAKE CHARLES, L.L.C. | * | |
| Defendant | * | MAGISTRATE JUDGE KAY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [Doc. 13], filed by the defendant, PNK Lake Charles, L.L.C. (PNK), to which the plaintiff, Denis J. Smith, has filed an Opposition [Doc. 18]. For the following reasons, the Motion [Doc. 13] is hereby **GRANTED**.

### FACTS & PROCEDURAL HISTORY

Ken Bower, a PNK employee, hired the plaintiff to work for PNK as an "Engineer III" at the L'Auberge du Lac Hotel and Casino (the casino) in Lake Charles, Louisiana, in March, 2005.[1] The plaintiff alleges that, on September 24, 2009, he was terminated from his position with PNK based upon his age, under the guise of poor performance.[2]

In opposition to the plaintiff's allegations, PNK points to several instances in which the plaintiff was disciplined for allegedly deficient performance of his assigned duties.[3] For instance, PNK has submitted a Performance Review, dated May 31, 2006, which states, in reference to the plaintiff: "Needs to learn more about the equipment that we have on property. See how it works and how to fix them . . . Learn how to troubleshoot electrical problems. Ask

---

[1] Pet. [Doc. 1-4], at ¶ 9; Memo. in Supp. [Doc. 13-1], at 1; Memo. in Opp. [Doc. 18], at 1; Depo. of Denis Smith [Doc. 13-2], at 10.
[2] Pet. [Doc. 1-4], at ¶ 6.
[3] *See* Memo. in Supp. [Doc. 13-1], at 1.

more questions about the things we work on. . . . Speed of work could speed up."[4] PNK also submits a Record of Counseling,[5] dated February 28, 2009, which describes an incident in which the plaintiff failed to complete a "basic electrical installation" over the course of two and one half hours, when another employee was able to complete the task in less than one hour.[6] On March 2, 2009, another Record of Counseling documents an incident in which the plaintiff allegedly violated L'Auberge's standards of conduct by failing to carry his voltmeter on his person, which at least in part resulted in delays on an ongoing electrical project.[7] The plaintiff to some extent disputes this allegation in that he states he had a malfunctioning "hot or not" current tester on his person at the time that was the substantial equivalent.[8] Another Record of Counseling, dated March 9, 2009, states that the plaintiff "failed to interact with [a] guest to satisfy their needs"[9] when he allegedly failed to satisfactorily respond to a call for a malfunctioning door lock. PNK alleges that the plaintiff informed a guest that her door lock would not be repaired until the following morning. PNK states that the plaintiff allegedly told his supervisor that the guest suggested just waiting until the following morning to repair the lock, but, when the supervisor contacted the guest, the guest stated that she had suggested nothing of the sort, was upset and afraid at the prospect of sleeping in an unlocked room.[10] This Record of Counseling indicates that this was considered a "final written warning."[11] PNK also states that, in May, 2009, the plaintiff "went into a guest room with an unsupervised minor. The guests

---

[4] Performance Review [Doc. 13-2], at 44.
[5] PNK's "Record of Counseling" forms appear to be used to document workplace disciplinary issues. The forms begin with preprinted boilerplate language, such as "[w]e have become aware of the following violation of L'auberge's Standards of Conduct and/or failure to meet Supervisor/Management's expectations or instructions[.]" See, e.g., Record of Counseling [Doc. 13-2], at 1.
[6] See Record of Counseling [Doc. 13-2], at 1. See also Aff. of Jacqueline St. Romain [Doc. 13-2], at 4-6 (stating that she is the custodian of personnel files and business records at L'Auberge, and attesting to the accuracy of the submitted records).
[7] Record of Counseling [Doc. 13-2], at 8.
[8] Record of Counseling [Doc. 13-2], at 8.
[9] Record of Counseling [Doc. 13-2], at 36.
[10] Record of Counseling [Doc. 13-2], at 36.
[11] Id.

complained, and as a result, the room rate was adjusted."[12] In response, the plaintiff states that he knocked and announced that he was there to repair a tub stopper, was granted entry, and departed without incident.[13] On July 21, 2009, another Record of Counseling was filled out addressing the plaintiff's failure to clean up glass shards from a broken light bulb in the shower of a guest room.[14]

The plaintiff, on the other hand, in support of his claim that his termination was due to his age, cites an instance in which Ray Clements, the night supervisor, called the plaintiff an "old fart."[15] Ray Clements and the plaintiff are approximately the same age.[16] Shortly thereafter, the plaintiff was allegedly transferred from the night shift to the day shift, at the behest of Ken Bower, Facilities Director, and Robert Morgan, Facilities Operations Manager.[17] He also alleges that Ken Bower called him an "old man," approximately two years prior to the plaintiff's termination.[18]

On September 22, 2009, the plaintiff was suspended from work for poor performance, at least in part because of his inability to fulfill his quota of servicing ten rooms per day.[19] On September 24, 2009, the plaintiff's employment was terminated.[20] The decision to terminate the plaintiff's employment was made by Ken Bower, the same person who had initially been responsible for hiring the plaintiff.[21] The plaintiff was 57 years old at the time of discharge.[22]

---

[12] Statement of Uncontested Material Facts [Doc. 13-3], at ¶ 6.
[13] *See* Security Incident Report [Doc. 13-2], at 35.
[14] Record of Counseling [Doc. 13-2], at 39.
[15] *See* Depo. of Denis Smith [Doc. 13-2], at 13.
[16] Depo. of Denis Smith [Doc. 13-2], at 19.
[17] Depo. of Denis Smith [Doc. 13-2], at 14.
[18] Depo. of Denis Smith [Doc. 13-2], at 15.
[19] Record of Counseling [Doc. 13-2], at 40; Employee Relations Report [Doc. 13-2], at 41.
[20] Termination Action Form [Doc. 13-2], at 42.
[21] *Id.*
[22] Charge of Discrimination [Doc. 13-2], at 32.

On December 29, 2009, the plaintiff lodged a charge of discrimination against PNK with the Louisiana Commission on Human Rights and the Equal Employment Opportunity Commission (EEOC).[23] On September 21, 2012, the plaintiff received a response from the EEOC New Orleans Field Office, stating that the investigation into the plaintiff's complaint had been discontinued upon a finding that the information provided by the plaintiff did not support his allegations.[24]

The plaintiff thereafter filed suit against PNK under the Louisiana Employment Discrimination Law, Louisiana Revised Statutes § 23:301, *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, on November 21, 2012, in the Fourteenth Judicial District Court for the Parish of Calcasieu, Louisiana.[25] On April 4, 2013, PNK removed the case to federal court, and this matter was scheduled for trial.[26] On May 20, 2014, PNK filed the instant Motion for Summary Judgment [Doc. 13] seeking a dismissal of the plaintiff's claims, with prejudice, in their entirety.

## LAW & ANALYSIS

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). No genuine issue of material fact exists if, based on the record, no reasonable juror could find for the nonmoving party. *Dreyer v. Yelverton*, 291 Fed. Appx. 571, 576 (5th Cir. 2008) (citation omitted). In ruling on a motion for summary judgment, all evidence is to be viewed in the light most favorable to the nonmoving

---

[23] Charge of Discrimination [Doc. 13-2], at 32.
[24] Letter from Charlotte Davis, EEOC Investigator, to Denis J. Smith, Sept. 12, 2012 [Doc. 1-4], at 19.
[25] Pet. [Doc. 1-4], at ¶¶ 5-9.
[26] *See generally* Notice of Removal [Doc. 1-1].

party. *Raby v. Livingston*, 600 F.3d 552, 557 (5th Cir. 2010) (*citing Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009)). The initial burden falls upon the moving party "to identify areas essential to the non-movant's claim in which there is an 'absence of a genuine issue of material fact.'" *Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400, 407 (5th Cir. 2011) (*citing Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005)). This burden may be met by "pointing out the absence of evidence supporting the nonmoving party's case." *Chambers*, 428 Fed. Appx. at 407 (citations and internal quotations omitted). If this burden is met, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial." *Id.* (*citing Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001)). The non-movant's burden may not be satisfied by "conclusory allegations" or "unsubstantiated assertions." *Id.* (*citing Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008)).

The ADEA provides a cause of action for an employee to seek relief against an employer who has engaged in discriminatory employment practices on the basis of age. *Walton-Lentz v. Innophos, Inc.*, 476 Fed. Appx. 566, 569 (5th Cir. 2012) (*citing* 29 U.S.C. § 626(c)). The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 28 U.S.C. § 623(a)(1).

ADEA claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-03 (1973). *See Manaway v. Med. Ctr. of SE Tex.*, 430 Fed. Appx. 317, 321 (5th Cir. 2011) (citation omitted). A plaintiff can demonstrate age discrimination in one of two ways: through either direct evidence, or circumstantial evidence.

*Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)). "Direct evidence" is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Read v. BT Alex Brown, Inc.*, 72 Fed. Appx. 112, 119 (5th Cir. 2003) (citation omitted). "Mere stray remarks, however distasteful, do not demonstrate discriminatory animus." *Id.* at 120 (citing *E.E.O.C. v. Texas Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)).

This framework dictates that the plaintiff whose ADEA claims based on circumstantial evidence must first "create a presumption of discrimination by making a *prima facie* case." *Manaway*, 430 Fed. Appx. at 321 (citation omitted). "To prove a *prima facie* case of age discrimination under the ADEA, a plaintiff must show [he] was discharged; qualified for the position; within the protected age group at the time of the discharge; and either replaced by someone younger, replaced by someone outside the protected class, or otherwise discharged because of [his] age." *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (2011) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)) (emphasis added). "[T]he burden for establishing a *prima facie* case is 'very minimal.'" *Manaway*, 430 Fed. Appx. at 322 (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)).

"Once the plaintiff has made a *prima facie* case, the burden shifts to the employer to 'produce a legitimate, non-discriminatory reason for her termination,' which 'causes the presumption of discrimination to dissipate.'" *Manaway*, 430 Fed. Appx. at 321 (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). A plaintiff must then offer evidence demonstrating either disparate treatment, or that "the employer's proffered explanation is false or unworthy of credence[,]" to prove pretext. *Id.* (citation omitted). With regard to claims of disparate treatment, the Supreme Court has stated that "a plaintiff bringing a disparate-treatment

6

claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009). *See also Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2527-28 (2013).

It is undisputed that the plaintiff was discharged from his employment with PNK.[27] As to the plaintiff's qualifications for the job in question, while the various grievances and records of counseling filed against the plaintiff might raise a serious question as to whether he is qualified for the position from which he was discharged, it shall be assumed, *arguendo*, that he was so qualified. It is also undisputed that the plaintiff was within the protected age group.[28] *See* 29 U.S.C. § 631(a) (stating "[t]he prohibitions in this Act shall be limited to individuals who are at least 40 years of age). It also appears from the record that the plaintiff was replaced by someone younger in age than himself.[29] Given the minimal showing required, *see Manaway*, 430 Fed. Appx. at 322 (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)), the plaintiff has made a sufficient *prima facie* showing under the ADEA, and, under the *McDonnell Douglas* framework, the burden now shifts to PNK to show a legitimate, non-discriminatory reason for the plaintiff's termination.

The Fifth Circuit has stated that "[t]his burden is one of production, not persuasion; it can involve no credibility assessment." *Cervantez v. KGPG Servs. Co.*, 349 Fed. Appx. 4, 8-9 (5th Cir. 2009). PNK has produced evidence of the plaintiff's failure to appropriately interact with guests of the hotel and timely respond to their complaints.[30] There is evidence of the plaintiff's failure to observe safety practices in failing to properly clean up following his completion of

---

[27] *See* Termination Action Form [Doc. 13-2], at 42.
[28] *See* Aff. of Jacqueline St. Romain [Doc. 13-2], at ¶ 10.
[29] *See* Depo. of Denis Smith [Doc. 13-2], at 30-31.
[30] *See* Record of Counseling [Doc. 13-2], at 36.

repairs in a hotel room.[31] PNK has also submitted evidence of the plaintiff's failure to complete general electrical installations which were regularly required as part of the job responsibilities of an Engineer III in a timely manner.[32]

The plaintiff does not dispute these factual findings.[33] Furthermore, it is of no moment to argue that PNK's asserted reasons for termination, either standing alone or in the aggregate, were insufficient justification for terminating the plaintiff's employment. In ADEA cases, the question is not whether the employer made a poor decision in terminating the plaintiff; the question is whether the employer's motivation was discriminatory in nature. *See Cervantez v. KMPG Servs. Co.*, 349 Fed. Appx. 4, 9 n. 14 (5th Cir. 2009) (*quoting Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)).

The court finds that PNK has presented evidence sufficient to support a legitimate, non-discriminatory explanation for the plaintiff's termination, thereby overcoming the presumption of discrimination initially established by the plaintiff's *prima facie* case. In order to succeed, the plaintiff must now prove "pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'" *Manaway*, 430 Fed. Appx. at 322 (citation omitted). This does not require the plaintiff to disprove PNK's articulated reasons, but rather requires the plaintiff "to provide evidence sufficient to create a material fact issue on whether his termination was motivated by age." *Barber v. Shaw Group, Inc.*, 243 Fed. Appx. 810, 812 (5th Cir. 2007).

The only evidence that the plaintiff cites to in support of his argument that PNK's proffered reasons for his termination were pretextual is 1) an instance in which Ray Clements

---

[31] *See* Record of Counseling [Doc. 13-2], at 39.
[32] *See* Record of Counseling [Doc. 13-2], at 1. *See* Pl.'s Statement of Uncontested Material Facts [Doc. 18-1], at ¶ 1 (stating only that the "[d]efendant's uncontested facts are contested as to their *interpretation* of the represented facts") (emphasis added).
[33] *See generally* Memo. in Opp. [Doc. 18], at 1-3.

8

called him an "old fart";[34] and 2) an instance in which Ken Bower called him an "old man."[35] Both of these instances occurred at least one year prior to the plaintiff's termination.[36]

The Fifth Circuit utilizes the four-part test set forth in *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996), in analyzing whether workplace remarks constitute sufficient evidence of discrimination for ADEA purposes. *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999).

> For comments in the workplace to provide sufficient evidence of discrimination, they must be "1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the termination[]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue."

*Id.* (citation omitted). "Comments that are 'vague and remote in time' are insufficient to establish discrimination." *Trotter v. BPB Am., Inc.*, 106 Fed. Appx. 272, 276 (5th Cir. 2004) (citation omitted). In *Read v. BT Alex Brown, Inc.*, 72 Fed. Appx. 112 (5th Cir. 2003), the court found that age-related statements made nearly three years prior to the plaintiff's termination could not be viewed as proximate in time, nor could they be "considered as meaningfully probative evidence that [the plaintiff's] termination was discriminatory." *Read*, 72 Fed. Appx. at 120. In *Auguster v. Vermilion Parish School Board*, 249 F.3d 400, 405 (5th Cir. 2001), the court found that a comment made almost one year prior to the employment decisions at issue was too remote to warrant consideration, and in *Brown*, 82 F.3d at 656, the court found a comment made approximately sixteen months prior to the employment decision to be too remote. *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 Fed. Appx. 307, 313 (2008) (citations omitted).

---

[34] *See* Depo. of Denis Smith [Doc. 13-2], at 13.
[35] Depo. of Denis Smith [Doc. 13-2], at 15.
[36] There is also some deposition testimony which could indicate that Allen Newman also called the plaintiff an "old man" approximately one year prior to the plaintiff's termination. However, as Allen Newman is an Engineer III, as was the plaintiff, and Mr. Newman did not have authority over the employment decision at issue herein—namely, the hiring or firing of the plaintiff—Mr. Newman's statement is immaterial. *See* Depo. of Denis Smith [Doc. 13-2], at 21.

While the instant comments were indeed related to the protected class of which the plaintiff was a member, it cannot be said that the alleged comments were in any way proximate in time to the plaintiff's termination. Furthermore, the plaintiff presents no evidence that the comments in question were in any way related to the employment decision at issue—the plaintiff's termination. As such, the court finds that the plaintiff has failed to carry his burden of proving that PNK's purported reasons for termination were pretextual, and his ADEA claim fails as a result. Given this result, it is unnecessary to reach PNK's argument regarding the applicability of the "same actor" inference to the instant matter with regard to the fact that Ken Bower, Director of Facilities, both hired and fired the plaintiff.[37]

While the foregoing disposes of the plaintiff's claim under the ADEA, the plaintiff has also asserted a claim under Louisiana's Employment Discrimination Law, Louisiana Revised Statutes § 23:301, et seq.[38] However, "[t]he two statutes are substantively similar and federal and state courts routinely follow cases interpreting the ADEA when evaluating claims brought under the [Louisiana Employment Discrimination Law], recognizing the same burden of proof and defenses." Vines v. Univ. of La., 398 F.3d 700, 710 (5th Cir. 2005) (citations omitted). As a result, the plaintiff's state law claim also fails for the reasons already stated. Accordingly,

**IT IS ORDERED** that PNK's Motion [Doc. 13] be and hereby is **GRANTED**, and the

---

[37] See Memo. in Supp. [Doc. 13-1], at 12-13. See, e.g., Lawson v. Graphic Packaging Int'l, Inc., 549 Fed. Appx. 253, 258 (5th Cir. 2013) (stating, "[t]he 'same actor' inference arises when the individual who allegedly discriminated against the plaintiff was the same individual who hired the plaintiff and gives rise to an inference that discrimination was not the motive behind plaintiff's termination.").
[38] See Pet. [Doc. 1-4], at ¶¶ 5-9.

plaintiff's claims against PNK in the above captioned matter be and hereby are **DISMISSED**, **WITH PREJUDICE**, in their entirety.

Lake Charles, Louisiana, this 30 day of July, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE